## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID BURKES on behalf of
himself and other similarly situated,

Civil Action No. 2:22-cv-1054

Plaintiffs,

vs.

Complaint-Class and Collective Action

ARIAS AGENCIES, and AMERICAN
INCOME LIFE INSURANCE COMPANY

ELECTRONICALLY FILED

Defendants.

Jury Trial Demanded

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff, David Burkes ("Plaintiff" or "Burkes") by and through his undersigned counsel, individually and on behalf of all persons similarly situated, files this Complaint against Defendants Arias Agencies ("Defendant" or "Arias"), and American Income Life Insurance Company ("Defendant" or "AIL") seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. §§201, *et seq*. ("FLSA") and Pennsylvania law. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. Pa. C.S.A. § 216(b) and 28 U.S.C. § 1331.

2.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims derive from a common nucleus of operative facts.

1

3.     Venue in this Court is proper pursuant to 28 U.C. 1391. Plaintiff resides in this judicial district, the events giving rise to Plaintiff's claims occurred within this district, and the Defendants do business in this district.

## II.  PARTIES

4.     Plaintiff, David Burkes is an adult individual who resides at 195 Wallace Circle, New Castle, Pennsylvania 16101. He worked for Defendants located at 150 Lake Drive #105, Wexford, PA 16101, between approximately June 2020 and February 2022, and pursuant to 29 U.S.C. §216(b), has consented in writing to being a Plaintiff in this action. Plaintiff's Consent to Join form is attached hereto as **Exhibit A**.

5.     Arias Agencies ("Defendant" or "Arias Agencies") is a Pennsylvania corporation and has its principal place of business at 150 Lake Drive, Suite 105, Wexford, Pennsylvania, 15090.

6.     American Income Life Insurance Company ("Defendant" or "AIL") is an Indiana corporation and operates throughout the United States, including approximately thirteen offices in this judicial district.

7.     AIL is a financial services business which includes selling life insurance products to consumers through its agencies such as Arias Agencies.

8.     AIL is an insurance company registered with the National Association of Insurance Commissioners.

9.     Defendants employed Plaintiff and similarly situated employees.

10.     AIL employs Plaintiffs and other individuals engaged in commerce or in the production of good for commerce and/or handling, selling, or otherwise working on goods or

2

materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206- 207.

11.  The Defendants' annual gross volume of business each exceeds $500,000.00.

12.  The Defendants are not independently owned and controlled local enterprises within the meaning of 29 U.S.C. § 207(b)(3).

13.  Plaintiffs bring this lawsuit pursuant to 29 U.S.C. 216(b) as a collective action on behalf of the following class of potential opt-in litigants:

> *All individuals who trained to become and/or worked as sales agents/insurance producers for American Income Life Insurance in the last three (3) years.*

14.  Plaintiffs also bring this lawsuit for Counts Three through Six as a class action pursuant to the Federal Rules of Civil Procedure 23, on behalf of themselves and the following class:

> *All individuals who trained to become and/or worked as sales agents/insurance producers for American Income Life Insurance in the last three (3) years.[1]*

15.  The FLSA Class and the Pennsylvania Class are together referred to as the "Classes."

16.  Plaintiffs reserve the right to re-define the Classes prior to notice or class certification, and thereafter, as necessary.

### III. BACKGROUND FACTS

17.  Defendants employed and/or employ members of the Classes throughout the United States.

---

[1] The statute of limitations for Plaintiffs' unjust enrichment claims is four years. Accordingly, Count IV of the Complaint goes back four years.

18.     From June 2020 through February 2022, Plaintiff Burkes was employed as an insurance producer, selling life insurance products on behalf of Defendants.

19.     Plaintiff worked at the location at 150 Lake Drive #105, Wexford, PA 15090.

20.     Defendants hire agents, who are paid on a commission basis.

21.     When agents begin work, they enter into an "Agent Contract" with AIL. ***See Exhibit B.*** The Agent Contract provides, in relevant parts, as follows:

   a. "The Agent is an independent contractor to the fullest extent permissible by law and will not be treated as an employee with respect to services performed under this Contract, including for Federal and State tax purposes. The agent has no fixed hours and is free to choose the time and manner in which services are performed;"

   b. The Agent Contract lays out a commission schedule for the agents.

   c. "The agent shall be responsible for all expenses incurred in the production of insurance for the Company. The Agent shall, at his or her own expense, furnish his or her own means of transportation … and any other relevant expense incurred solicitation of insurance for the Company."

   d. "All disputes, claims, questions and controversies of any kind or nature arising out of or relating to this Contract… except a dispute regarding the enforceability of this agreement to arbitrate, shall be submitted to binding arbitration…Arbitration shall be on an individual, not a class, collective, representative, or private attorney general basis. If this class-action waiver is deemed unenforceable, the entire agreement to arbitrate shall not apply."

   e. "Aside from issues relating to arbitration or the enforceability of this agreement to arbitrate, all issues relating to any dispute, claim, or controversy arising out of or relating to this Contract shall be governed by and decided in accordance with the internal laws of the State of Texas, without regard to its choice-of-law rules."

22.     In addition, the Agent Contract includes a "Special Notice Acknowledgement" which provides, in relevant part, as follows:

*I alone will control the manner and means of my work. I will set my own work schedule, and I will be free to choose the manner in which my work is performed.*

4

23.     Prior to and following the execution of the Agent Contract, Defendants represented to Plaintiff and similarly situated employees that they would be provided with certain resources to perform the fundamental duties of their job.

24.     For example, Defendants provided Plaintiff and similarly situated employees with an employee handbook referenced as the "Arias Agent Playbook" which provides as follows:

> *The company must do what it promises, and it will ... Our promise is to provide you with the training, products and marketing that will ensure success for you.*

***See* Exhibit C.**

25.     Prior to and following the execution of the Agent Contract, Defendants promised Plaintiff and similarly situated employees that Defendants would provide Plaintiffs with certain resources to perform the fundamental duties of their job including but not limited to fully vetted, union member quality sales leads on a monthly basis, free of charge.

26.     Said promises are further evidenced throughout Defendant's course of conduct during Plaintiffs' employment as well as the Arias Agent Playbook.

27.     For example, the Arias Agent Playbook makes countless references to union members as prospective and actual customers, including but not limited to a "Union/Association/Credit Union Lead Phone Script," and expressly provides as follows:

> *As an AIL representative, you are privileged to work with union members throughout North America ... our commitment is strict honesty in our dealings with the union community ... We must never imply the union has any interest about whether or not the member buys insurance.*

***See* Exhibit C,** 1.1 *The Miracle of AIL Opportunity Unlimited* and 3.7 *Union/Association/Credit Union Lead Phone Script.*

28.     Plaintiff and similarly situated employees were not provided with certain resources to perform the fundamental duties of their job, including but not limited to fully vetted, union member quality sales leads on a monthly basis, free of charge.

29.     Plaintiff and similarly situated employees provided Defendants additional consideration other than the services for which they were hired by working long hours at Defendants' mandate and against Plaintiffs' will, often exceeding sixty (60) hours per week without compensation for same.

30.     Plaintiffs were required to work a minimum of six (6) days per week which is further evidenced by the "Sample Successful Schedule" as provided in the Arias Agent Playbook, **Exhibit C**.

31.     Specifically, the Playbook specifies certain metrics that are required for Plaintiffs to produce six (6) days of every week from Monday through Saturday, to include "8 Appointments" on Saturdays. ***See* Exhibit C**, *3.1 Sample Successful Schedule*.

32.     The Playbook also provides "Scheduling Tips" including but not limited to "Every Saturday, bolster your appointments by waking up early and start calling your leads at 8:00 AM on Saturday, everyone is home." ***See* Exhibit C**, *3.3 Scheduling Tips*.

33.     Plaintiff and similarly situated employees provided Defendants additional consideration other than the services for which they were hired by enduring substantial hardship as a result of Defendants' instruction, direction, and encouragement to engage in unethical, deceptive, and fraudulent sales tactics with Defendants' customers on a consistent basis.

34.     Defendants' consistent instruction, direction, and encouragement for Plaintiffs to engage in unethical, deceptive, and fraudulent sales tactics were to the detriment of Plaintiff's income, professional reputation, and mental health, and to the financial benefit of Defendants.

35.    Upon hire, Defendants required Plaintiffs and similarly situated new hires to attend training.

36.    New hires are informed they will make a minimum of $1,000 per week for two weeks of mandatory training.

37.    Training lasts at least several weeks, and the agents work more than eight hours per day, six or more days per week, and over forty (40) hours a week while training.

38.    Plaintiff and other similarly situated employees are provided with specific performance goals and expectations which they are required to meet prior to and during the training period.

39.    For example, Defendants require Plaintiff and similarly situated employees to perform as follows:

   a.    know entire presentation before entering classroom training;

   b.    review each lead with your manager;

   c.    A/V tape must be completed and scored at a 7 (out of 10 points) or better and reviewed with your manager;

   d.    You must be a part of 15 presentations and 5 sales and witness $2,000 ALP written. This must include at least 2 sponsor presentations and 2 sponsor sales; and,

   e.    You must experience 4 in-office Critique Sessions (with your MGA) within your 1st 2 weeks in the field by yourself.

*See* **Exhibit C,** 2.1 *Arias Agency Training and Office Procedures Your Expected Activity in Training*.

40.    Since agents do not make sales while in training, and their compensation is completely commission based, they do not earn money while training.

41.     Plaintiff and similarly situated employees were not paid for their time spent in training.

42.     Upon information and belief, Defendants wrongfully classified Plaintiff and similarly situated insurance workers as independent contractors.

43.     Plaintiff and similarly situated individual's relationship with Defendants followed the normal path of an employee, not an independent contractor.

44.     For example, Defendants regulate its agents' schedules, requiring off-site sales meetings with potential buyers to occur at certain times and days of the week as well as in-office sales meetings and calls to occur at certain times and days of the week.

45.     The Defendants controlled practically all aspects of Plaintiff and similarly situated individuals' work, including but not limited to the following particulars:

   a.   Control over the manner in which said work was performed;

   b.   Control over work schedule, including but not limited to certain days of the week, times, and amount of hours worked;

   c.   Control over work schedule, requiring in-office meetings at certain times and days of the week;

   d.   Control over work schedule, requiring in-office sales calls at certain times and days of the week;

   e.   Control over work schedule, requiring off-site sales meetings with potential buyers to occur at certain times and days of the week;

   f.   Control over work schedule, requiring off-site team meetings, often involving significant travel and overnights;

   g.   Control over work location;

   h.   Control over work performance;

   i.   Control over work attire and dress code;

j.   Controlling the products Plaintiffs and similarly situated individuals could sell;

k.   Requiring completion of the Defendants' training and orientation programs;

l.   Requiring compliance with the Defendants' written policies and guidelines;

m.  Paying Plaintiffs and similarly situated individuals on a weekly basis;

n.   Discouraging from holding other jobs; and

o.   Controlling Plaintiffs and similarly situated individuals' work in all other respects.

46.      More specifically, Defendants controlled Plaintiff and similarly situated employees by expressly mandating minimum requirements including but not limited to the following:

a.   *30 Appointments a Week 15 Presentations a Week;*

b.   *$2,000 ALP (minimum) submitted every week;*

c.   *Minimum $100 of ALP average produced per Group Lead used;*

d.   *You must average gaining 2 Referral Leads for every Group Lead used weekly;*

e.   *Minimum 30% of presentations each week are Referral Presentations from very first week;*

f.   *5 to 7 Door Knocks a Day (see door knock procedures);*

g.   *Must put your presentation on film every month to be reviewed and approved by your manager;*

h.   *Paperwork must be turned in on Mondays by 9 am;*

i.   *Leads coded daily;*

j.   *Weekly recognition meetings are Mondays at 11 am;*

> k. *Business attire must be worn in the office during business hours unless otherwise stipulated by management; and,*
>
> l. *Mondays are dress down days.*

*See* **Exhibit C,** *2.1 Arias Agency Training and Office Procedures Your Expected Activity after Training.*

47.     Plaintiff and similarly situated individuals performed duties that were integral to the Defendants' businesses.

48.     The Defendants controlled the method and means of Plaintiff and similarly situated individuals' work including that of Plaintiffs and not merely the result of the work.

49.     Plaintiffs were not paid minimum wage or overtime pay.

50.     Plaintiffs did not receive regular meal and rest breaks and was not paid for missed breaks.

51.     Plaintiffs were required to pay their own expenses incurred in the performance of their job.

52.     Defendants did not negotiate distinct business agreements with each agent; rather, Defendants dictated standard terms for all agents.

## COLLECTIVE ACTION ALLEGATIONS

53.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. §216(b) as a collective action on behalf of the FLSA Class as defined above.

54.     Plaintiffs' desires to pursue his FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. §216(b).

55.     Plaintiffs and the FLSA Class are similarly situated as that term is used in 29 U.S.C. §216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common business practices and, as a result, were not paid their full amounts

of legally mandated overtime premium for hours worked over forty during the workweek, were not paid proper minimum wage for all hours worked up to forty (40) per week, were not paid for time spent in mandatory training, did not properly compensate Plaintiffs for missed meals and rest breaks, illegally required employees to pay their own work-related expenses, and subjected employees to illegal "chargebacks" by collecting back commissions from agents earned wages if a policy was later cancelled and/or otherwise deemed invalid.

56.     The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, as allowed to opt into it pursuant to 29 U.S.C. 216(B) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages, interest, and attorney's fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Pennsylvania Class described above.

58.     The members of the Pennsylvania Class are so numerous that joinder of all members is impracticable.

59.     Plaintiffs will fairly and adequately represent and protect the interests of the Pennsylvania Class because there is no conflict between the claims of Plaintiff and those of the Pennsylvania Class, and Plaintiffs' claims are typical of the claims of the Pennsylvania Class. Plaintiffs' counsel is competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases, like this one.

60.     There are questions of law and fact common to the proposed Pennsylvania Class, which predominate over any questions affective on individual Class members, including whether Defendants violated and continue to violate Pennsylvania law through its policy or practice of not paying proper wages to its employees.

61.     Plaintiffs' claims are typical of the claims of the Pennsylvania Class in the following ways: 1) Plaintiffs are members of the Pennsylvania Class; 2) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Pennsylvania Class; 3) Plaintiffs' claims are based on the same legal and remedial theories as those of the Pennsylvania Class and involve similar factual circumstances; 4) there are no conflicts between the interests of the Plaintiffs and the Pennsylvania Class members; and 5) the injuries suffered by Plaintiffs are similar to the injuries suffered by the Pennsylvania Class members.

62.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Pennsylvania Class predominate over any questions affecting only individual Class members.

63.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication or effort and expense that numerous individual actions would entail.

64.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Pennsylvania Class is readily identifiable

from Defendants' employment records. Prosecution of separate actions by individual members of the Pennsylvania Class would create the risk of inconsistent or varying adjudication with respect to the individual Class members that would establish incompatible standards of conduct for Defendants.

65.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. The amounts at stake for the Defendants' employees, while significant, are not great enough to maintain separate suits against Defendants.

66.    Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the Pennsylvania Class. Plaintiffs envision no difficulty in the management of this case as a class action.

### COUNT I
### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §201, *et seq.*, FAILURE TO PAY OVERTIME

67.    All previous paragraphs ae incorporated as though fully set forth herein.

68.    At all times relevant hereto, the Defendants were Plaintiffs' "employer" under the FLSA, 29 U.S.C. 203(d), subject to the provisions of 29 U.S.C. §§ 201, et seq.; 29 C.F.R. §791.2.

69.    At all times relevant hereto, Plaintiffs were an "employee" of the Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

70.    Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

71.     Plaintiff and the proposed Collective members are not exempt from the applicable provisions of the FLSA.

72.     At all times relevant hereto, the Defendants "suffered or permitted" Plaintiffs to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

73.     The FLSA requires an employer to pay all employees the federally mandated overtime premium rate of one and one-half times their regular pay for every hour worked in excess of 40 hours per workweek. 29 U.S.C. § 207.

74.     Plaintiffs regularly worked over 40 hours per week while employed by Defendants.

75.     Defendants violated the FLSA by failing to pay Plaintiffs' overtime compensation, at the rate of one and one-half times their regular hourly rate, for all hours worked in excess of 40 per workweek.

76.     Defendants violated the FLSA by failing to pay Plaintiffs proper minimum wage for all hours worked up to 40 per week.

77.     Defendants violated the FLSA by failing to pay Plaintiffs for time spent in mandatory training.

78.     Defendants violated the FLSA by failing to pay for Plaintiffs' missed meals and rest breaks.

79.     Defendants violated the FLSA by requiring Plaintiffs to pay his own work-related expenses.

80.     Defendants violated the FLSA by subjecting employees to "chargebacks" by illegally collecting back commissions from agents' earned wages if an insurance policy was later cancelled or otherwise invalidated.

81.      Defendants' violations of the FLSA were willful, with knowledge or reckless disregard of the statutory overtime requirements, as demonstrated by their failure to pay Plaintiffs an overtime premium for all hours worked in excess of 40 per week.

82.      As a result of the foregoing, Plaintiffs were injured and seek appropriate relief against Defendants including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

**COUNT II**
**VIOLATION OF 29 C.F.R. 516, *et seq.***
**FAILURE TO MAINTAIN REQUIRED RECORDS**

83.      All previous paragraphs are incorporated as though fully set forth herein.

84.      29 C.F.R. § 516.1 provides "every employer subject to any provision of the Fair Labor Standard Act" to maintain employee records.

85.      FLSA requires all employers to keep all payroll records and time records for at least 3 years, including but not limited to all basic timecards and daily starting/stopping times of individual employees. 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

86.      As Plaintiffs' employer, the Defendants were subject to the FLSA's record keeping requirements.

87.      The Defendants were obligated to maintain and preserve payroll or other records containing, without limitations, the total hours worked by each employee each workday and total hours worked by each employee each workweek. 29 C.F.R. § 516.2.

88.      Upon information and belief, the Defendants maintain corporate policies and/or practices of evading pay for their hourly employees by altering their time records and pay periods and failing to accurately record Plaintiffs' hours worked.

15

89.    The Defendants failed to maintain and preserve accurate timesheets and payroll records as required by 29 C.F.R. § 516.2.

90.    When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 1192 (1946) is controlling, and provides as follows:

> [w]here the employer's records are inaccurate or inadequate … an employee had carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the mount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

91.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. When damages are awarded, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had they kept records in accordance with… the Act." *Id.*

92.    As a result of the Defendants' record keeping violations, Plaintiffs seek a declaratory judgment and order that the Anderson burden-shifting framework applies in this case, along with all other relief just and appropriate under the circumstances.

## COUNT III
## VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT

93.    All previous paragraphs are incorporated s though fully set forth therein.

94.     The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered employees be compensated at a rate not less than the standard rate.

95.     The Pennsylvania Minimum Wage Act of 1968 requires that covered employees be compensated for all hours worked in excess of forty per week at a rate of at least one and one-half time the regular rate at which he or she is employed. See 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41.

96.     As described above, Plaintiffs were subjected to the Defendants' practice of not paying employees for all hours worked, including overtime.

97.     Plaintiffs were not properly compensated for hours worked at a rate equal to or above Pennsylvania's minimum wage.

98.     Additionally, Plaintiffs were not properly compensated for hours worked in excess of 40 hours per workweek.

99.     Defendants failed to pay Plaintiffs for time spent in mandatory training.

100.    Defendants failed to pay Plaintiffs for missed meals and rest breaks.

101.    Defendants illegally required Plaintiffs to pay his own work-related expenses.

102.    Defendants illegally subjected Plaintiffs to "chargebacks," by collecting back commissions from agents earned wages if a policy was later cancelled by the customer.

103.    Plaintiffs were non-exempt employees.

104.    In violating the PMWA, the Defendants acted willfully and with reckless disregard of the applicable provisions to the detriment of Plaintiffs.

**COUNT IV**
**VIOLATION OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW**

105.    All previous paragraphs are incorporated as though fully set forth therein.

106.    The Pennsylvania Wage Payment and Collection Law ("WPCL") requires that an employer pay all wages due to its employees. 43 P.S. § 260.3.

107.    The Defendants have intentionally failed to pay wages due to employment for the following:

        a.    Purposefully failing to pay Plaintiffs for the true and correct number of hours they have worked; and

        b.    Failing to pay Plaintiffs minimum wage and all other wages due.

108.    Pursuant to 43 P.S. 260.9 and 260.10, employers such as the Corporate Defendants who intentionally fail to pay an employee wages in conformance with the WPCL shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

109.    The Defendants do not have written authorization from Plaintiff and the Pennsylvania Class to withhold, divert, or deduct any portion of his wages that concern this action.

110.    The Defendants violated Pennsylvania law by failing to pay Plaintiffs for all compensable time and by failing to pay Plaintiffs for work time, including but not limited to overtime and Plaintiffs' earned monthly renewals.

111.    The Defendants failed to pay Plaintiffs for training.

112.    The Defendants failed to pay Plaintiffs for missed meals and rest breaks.

113.    The Defendants illegally required Plaintiffs to pay his own work-related expenses.

114.    The Defendants illegally subjected Plaintiffs to "chargebacks," by collecting back commissions from Plaintiffs' earned wages if a policy was later cancelled by the customer or otherwise invalidated.

## COUNT V
## UNJUST ENRICHMENT

115.     All previous paragraphs are incorporated as though fully set forth herein.

116.     The Defendants have received and benefitted from the uncompensated labor of Plaintiffs such that to retain such benefit without compensation would be inequitable and unjustly enrich the Defendants.

117.     At all times relevant herein, the Defendants devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing work from Plaintiffs and other agents without paying total compensation and overtime for hours worked.

118.     Contrary to good faith and fair dealing, the Defendants induced Plaintiffs to perform work while failing to pay them overtime and/or minimum wage compensation for all hours worked as required by law.

119.     By reason of having secured the work and efforts of Plaintiffs and the Pennsylvania Class without paying overtime and full compensation as required by law, the Defendants enjoyed reduced labor costs and consequently additional earnings and profit to their benefit.

120.     Therefore, Plaintiff and Pennsylvania Class are entitled to judgment in an amount equal to the benefits unjustly retained by the Defendants.

## COUNT VI
## DECLARATORY RELIEF – RECISSION OF AGENT CONTRACT

121.     All previous paragraphs are incorporated as though fully set forth herein.

122.     Prior to agents working for the Defendants, they are required to sign an "Agent Contract." *See* **Exhibit C**.

123.    The agreement specifically states that "the Agent has no fixed hours and is free to choose the time and manner in which services are performed." *See* **Exhibit C**.

124.    Prior to execution of the Agent Contract, Defendants verbally represented to Plaintiffs and similarly situated employees that they would have no fixed hours and would be free to choose the time and manner in which their services were performed.

125.    The representation of being able to make their own hours and be free to choose the time and manner in which their services were performed is a material element of the express and implied employment agreements between Plaintiffs and Defendants.

126.    These statements were made falsely by Defendants, who have knowledge of its falsity as they regulate, mandate, and control their agents' schedules, requiring off-site sales meetings with potential buyers to occur at certain times and days of the week as well as in-office sales meetings, team meetings, and calls to occur at certain times and days of the week, *inter alia*. *See* **Exhibit C**.

127.    Prior to and subsequent to the execution of the Agent Contract, Defendants represented to Plaintiffs and similarly situated employees that Plaintiffs would be provided with certain resources to perform the fundamental duties of their job.

128.    For example, prior to the execution of the Agent Contract, Defendants provided Plaintiff and similarly situated employees with an employee handbook referenced as the "Arias Agent Playbook" which provides as follows:

> *The company must do what it promises, and it will ... Our promise is to provide you with the training, products and marketing that will ensure success for you*.

*See* **Exhibit C**.

129.    Prior to and following the execution of the Agent Contract, Defendants promised to provide Plaintiffs with certain resources to perform the fundamental duties of his job,

including but not limited to fully vetted, union member quality sales leads on a monthly basis, free of charge.

130.    Said promises are further evidenced throughout Defendant's course of conduct during Plaintiffs' employment as well as the Arias Agent Playbook.

131.    For example, the Arias Agent Playbook makes countless references to union members as prospective and actual customers, including but not limited to a "Union/Association/Credit Union Lead Phone Script," and expressly provides as follows:

> *As an AIL representative, you are privileged to work with union members throughout North America … our commitment is strict honesty in our dealings with the union community … We must never imply the union has any interest about whether or not the member buys insurance.*

*See* **Exhibit C**, *1.1 The Miracle of AIL Opportunity Unlimited, 3.7 Union/Association/Credit Union Lead Phone Script.*

132.    Defendants failed to provide Plaintiffs with certain resources to perform the fundamental duties of his job, including but not limited to fully vetted, union member quality sales leads on a monthly basis, free of charge.

133.    Defendants' promise to provide Plaintiffs with certain resources to perform the fundamental duties of his job, including but not limited to fully vetted, union member quality sales leads on a monthly basis, free of charge, is a material element to Plaintiffs' implied employment agreement with Defendants.

134.    These statements were made falsely by Defendants, who have knowledge of its falsity as they regulate and control the dissemination of certain resources for employees to perform the fundamental duties of their job, which did not include fully vetted, union member quality sales leads on a monthly basis, free of charge.

135.     Plaintiff and similarly situated employees provided Defendants additional consideration other than the services for which they were hired by working long hours at Defendants' mandate and against Plaintiff's will, often exceeding sixty (60) hours per week without compensation for same.

136.     Plaintiffs were required to work a minimum of six (6) days per week which is further evidenced by the "Sample Successful Schedule" as provided in the Arias Agent Playbook, **Exhibit C**.

137.     Specifically, the Playbook specifies certain metrics that are required for Plaintiffs to produce six (6) days of every week from Monday through Saturday, to include "8 Appointments" on Saturdays. ***See* Exhibit C**, *3.1 Sample Successful Schedule*.

138.     The Playbook also provides "Scheduling Tips" including but not limited to "Every Saturday, bolster your appointments by waking up early and start calling your leads at 8:00 AM on Saturday, everyone is home." ***See* Exhibit C**, *3.3 Scheduling Tips*.

139.     Plaintiff and similarly situated employees provided Defendants additional consideration other than the services for which they were hired by enduring substantial hardship as a result of Defendants' instruction, direction, and encouragement to engage in deceptive, unethical, and fraudulent sales tactics with Defendants' customers.

140.     Defendants' consistent instruction, direction, and encouragement for Plaintiffs to engage in unethical, deceptive, and fraudulent sales tactics were to the detriment of Plaintiff's income, professional reputation, and mental health, and to the financial benefit of Defendants.

141.     The Defendants intentionally misled the Plaintiffs in order to fraudulently induce them to accept a position with the Defendants and enter into express and implied employment agreements to the Defendants' benefit.

142.     The Defendants intentionally defrauded the Plaintiffs regarding work hours, schedules, professional development, and amount of pay to entice them to work for less money than they are entitled to.

143.     Plaintiffs justifiably relied on these misrepresentations when accepting a position with the Defendants and entering into an express and implied employment agreement with Defendants.

144.     The resulting injury is directly connected to Plaintiffs being mischaracterized as independent contractors, rather than employees, specifically in relation to being forced to work certain schedules, attend meetings at certain times and places, and being required to account for their time to Defendants, among other things.

145.     An actual dispute and controversy have arisen between the Plaintiffs and Defendants regarding whether or not the Agent Contract and the provisions set forth therein are enforceable.

146.     For the reasons set forth above, Plaintiffs seek a declaratory judgment rescinding the Agent Contract as it was induced by fraud.

147.     A judicial determination is necessary and appropriate at this time to determine the respective rights of Plaintiffs and Defendants.

148.     Plaintiffs requests a declaration from this Court that the Agent Contract is rescinded.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests an order for relief as follows:

a.     An order permitting this litigation to proceed as a collective action pursuant to 20 U.S.C. §216(b);

b.      An order compelling Defendants to provide a full list of all current and former employees for the last three (3) years;

c.      Prompt notice, pursuant to 29 U.S.C. 216(b), of this litigation to all potential Class members;

d.      An order permitting this litigation to proceed as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the Pennsylvania Class;

e.      An order rescinding the Agent Contract for all Plaintiffs;

f.      Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permissible under the law;

g.      Liquidated damages to the fullest extent permitted under the law;

h.      Litigation costs, expenses, and attorneys' fees to the fullest extent possible under the law; and

i.      Such other and further relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled case.

Date: July 22, 2022                                                      Respectfully submitted,

*/s/ Amy N. Williamson*
Amy N. Williamson, Esq.
Williamson Law LLC
Law and Finance
429 Fourth Avenue, Suite 300
Pittsburgh PA 15219
412-600-8862
awilliamson@awilliamsonlaw.com